IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-446-BO-RN

WILLIAM LANHAM,                              )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )         O R D E R
                                             )
TOWN OF LOUISBURG, NORTH                     )
CAROLINA, CHRISTOPHER L. NEAL,               )
in his individual capacity, and SEAN         )
MEDLIN, in his individual capacity,          )
                                             )
                Defendants.                  )

This cause comes before the Court on defendants' motions to dismiss. [DE 14]; [DE 19].

Plaintiff has responded, defendants have replied, and a hearing in this matter was held before the

undersigned on December 4, 2025, at Raleigh, North Carolina. In this posture, the motions are ripe

for disposition. For the reasons that follow, defendants' motions are denied.

BACKGROUND

Plaintiff commenced this action by filing a complaint in Franklin County, North Carolina

Superior Court. [DE 1-1]. Defendants removed the case to this Court pursuant to its federal

question jurisdiction. [DE 1]. Plaintiff's complaint seeks damages related to his employment with

the Town of Louisburg and he alleges three causes of action: First Amendment retaliation under

42 U.S.C. § 1983 and state law claims for defamation and intentional infliction of emotional

distress.

In his amended complaint, plaintiff alleges as follows. [DE 17]. Plaintiff served as the

part-time Fire Chief for the Louisburg Fire Department from 2013 until his termination in

November 2024. During the time period relevant to plaintiff's claims, defendant Christopher Neal was the Mayor of Louisburg and defendant Sean Medlin was the Town Administrator.

Plaintiff alleges that, after learning that firefighters were not receiving proper wages, he advocated to Medlin for fair compensation and correct vacation accrual rates for firefighters. Plaintiff alleges that thereafter Medlin began to spread defamatory statements about plaintiff – that plaintiff uses people and abuses women for personal gain – in response to plaintiff's advocacy for firefighters. Plaintiff reported Medlin's comments to the Town's human resources department.

In September 2024, a mildly suggestive ("PG-13") photograph circulated on Facebook which depicted a woman dressed in firefighting gear and posing in the Town's fire station. [DE 17] at 8. Plaintiff was not present when the photograph was taken. Plaintiff investigated the incident and contacted the police to have the woman trespassed. The woman later returned to the fire station and plaintiff confronted her, telling her she would be arrested for trespassing if she came back. The woman left without incident. Plaintiff reported the incident and his follow-up to Medlin.

On September 12, 2024, a volunteer firefighter died after responding to two emergency calls. Plaintiff criticized the Town's lack of response after the Town did not offer a public statement about the death or counseling services to other firefighters. Plaintiff voiced these criticisms during a public council meeting in October 2024, and plaintiff alleges that his statements angered and embarrassed Medlin and Neal. Plaintiff alleges that the part-time Fire Chief position was dissolved on November 12, 2024, following a closed session meeting of the Town Council. The Town had decided to hire a full-time Chief, and plaintiff was officially terminated on November 13th. The termination letter, signed by Neal, was sent to the address of plaintiff's

2

estranged wife, despite defendants' knowledge that plaintiff and his wife were going through a divorce and no longer living together.

In November 2024, the local paper ran stories about the fire department that plaintiff contends were defamatory and published at the direction of defendant Neal. The articles specifically referenced the woman who had posed in firefighting gear and wrongly suggested that plaintiff was somehow involved with the pictures. Neal is quoted in the articles which described the Facebook photo as the final straw, resulting in a change to the Fire Department's leadership. Newspaper articles also referenced plaintiff's alleged lack of availability, quoting Neal as saying that plaintiff's work with the State Fire Marshal's Office had created scheduling conflicts. Plaintiff alleges that defendant Neal was trying to shift blame and manufacture justification for plaintiff's termination while damaging plaintiff's reputation. Plaintiff alleges that the delay between the firehouse pictures and Neal's statements demonstrate that the basis proffered for plaintiff's termination was pretextual, and that plaintiff was fired in retaliation for his public statements about Neal and Medlin's lack of respect for a fellow firefighter. Plaintiff further alleges that he was terminated in retaliation for advocating for better pay and benefits for firefighters.

## DISCUSSION

At the outset, in light of the filing of an amended complaint, defendants' motion to dismiss the original complaint [DE 14] is denied as moot. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (amended complaint renders original complaint of no effect).

A 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the complaint's legal and factual sufficiency. *See* Fed. R. Civ. P. 12(b)(6). The focus is on the pleading requirements under the Federal Rules, not the proof needed to succeed on a claim. "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim

3

showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This standard does not require detailed factual allegations, *id.*, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible, its factual content must permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Defendants Neal and Medlin argue that they are entitled to qualified immunity on plaintiff's § 1983 First Amendment retaliation claim. Because qualified immunity provides immunity from suit, the Court considers this issue first. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> Defendants may raise the qualified immunity defense at both the motion to dismiss and motion for summary judgment stages of litigation. *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). While the defense can be presented at the motion to dismiss stage, "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Without precise facts, determining if a reasonable officer would have known that he was violating a constitutional right is difficult. *B.R. v. F.C.S.B.*, No. 1:19-CV-917, 2023 WL 2464975, at \*21 (E.D. Va.

4

Mar. 10, 2023) (citing *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018)). Consequently, a defendant raising a qualified immunity defense at this early stage in the proceedings "faces a formidable hurdle" and "is usually not successful" because a plaintiff must only show a plausible claim. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (citation omitted).Thus, courts often defer the question of qualified immunity until a later stage in the proceedings. *See Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013) (denying a motion to dismiss without prejudice as to the question of qualified immunity until there is a more developed record when a plaintiff has sufficiently alleged a constitutional violation); *Smith v. Parker*, No. 7:19-CV-00410, 2020 WL 2840160, at **10-11 (W.D. Va. June 1, 2020) (same); *see also Cooper v. Nichols*, No. 1:17-CV-1466, 2019 WL 418856, at *4 (E.D. Va. Feb. 1, 2019) (same).

*Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 621 (W.D. Va. 2025).

"As a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (cleaned up). To establish a First Amendment § 1983 retaliation claim, a plaintiff must demonstrate that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (cleaned up).

Neal and Medlin argue that plaintiff has failed to plausibly allege that a constitutional violation occurred and they are therefore entitled to qualified immunity. As to the first inquiry of the First Amendment analysis, defendants argue that plaintiff was a public employee and that his speech was not protected by the First Amendment. "To determine whether a public employer's action against an employee violates the First Amendment, we must balance the employee's interest 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Campbell v. Galloway*, 483 F.3d 258, 266 (4th Cir. 2007) (citation omitted). "So long as [public] employees are speaking as citizens about matters of public concern, they must face only those

5

speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Matters of public concern include issues of political, social, or other interests to a community. *Campbell*, 483 F.3d at 266. Matters of public concern do not include personal grievances, complaints about employment, and topics of personal interest. *Id.* "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

A court must further determine whether the plaintiff's "interest in First Amendment expression outweighed the [defendant]'s interest in the efficient provision of public services." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006). Relevant factors include whether the plaintiff's speech "(1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed." *Id.*

Here, the Court determines that plaintiff has plausibly alleged that he was speaking on matters of public, rather than personal concern, and that the Town's interests did not outweigh plaintiff's interest in his First Amendment expression. A determination of whether plaintiff's speech should be considered to have been on matters of public concern benefits from consideration of the whole record. *Connick*, 461 U.S. at 148. For example, defendants argue that when speaking about firefighter compensation plaintiff must have been speaking about his own compensation as well, and therefore he raised a personal employee grievance and not a matter of public concern.

6

But the Court is unable to draw that conclusion at this stage without knowing the precise nature and circumstances of plaintiff's statements. The Court is also mindful that discovery may show that the Town's interests were greater than plaintiff's interests in his First Amendment expression, but at this stage there is nothing in plaintiff's complaint which would suggest that plaintiff's statements impeded the performance of his duties, abused his authority and public accountability, or interfered with the operation of the Town or Fire Department. *See Ridpath*, 447 F.3d at 318. In either event, plaintiff's claims that he engaged in protected speech are sufficiently plausible such that examining qualified immunity at this stage would be premature.

Plaintiff's allegation that he was terminated is sufficient to plausibly allege the second element of a First Amendment retaliation claim. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Plaintiff has also plausibly alleged that his termination was substantially based on his public criticisms of defendants. While plaintiff alleges that the Town decided to transform the Fire Chief from a part-time to a full-time position, his allegations plausibly suggest that, rather than maintain plaintiff in that role until a full-time Fire Chief was selected or offer plaintiff the full-time position, he was abruptly terminated because Neal and Medlin did not approve of plaintiff's speech.

And as to the second prong of the qualified immunity analysis, it has long been established that "a public employee [cannot] be fired solely for making protected statements." *Ridpath*, 447 F.3d at 320. Accordingly, the Court will defer deciding the question of qualified immunity until a later stage in this case.

Defendants Neal and Medlin also seek public official immunity for plaintiff's defamation claim alleged against them in their individual capacities. "A public official can only be held individually liable for damages when the conduct complained of is malicious, corrupt, or outside

7

the scope of official authority." *Hunter v. Transylvania Cnty. Dep't of Soc. Servs.*, 207 N.C. App. 735, 737 (2010). North Carolina "law presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Doe v. City of Charlotte*, 273 N.C. App. 10, 24 (2020) (internal quotation and citation omitted). In order to "rebut the presumption of good faith[, evidence] must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise." *Dobson v. Harris*, 352 N.C. 77, 85 (2000). In the context of public official immunity, the pleading standard is "not a mere formality" and is "especially important[.]" *R.A. v. Johnson*, 36 F.4th 537, 545 (4th Cir. 2022).

Here, plaintiff has alleged that Neal and Medlin acted maliciously when they caused known false statements to be published regarding plaintiff. "A malicious act [] has three elements: it is '(1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another.'" *Id.* (citation omitted). Importantly, plaintiff has alleged that Neal and Medlin made the false statements with the intention of creating widespread contempt for and ridicule of plaintiff and to impeach plaintiff in his profession. Taking plaintiff's allegations as true, as it must at this stage of the proceeding, the Court determines that plaintiff has sufficiently alleged that Neal and Medlin acted with malice such that their defense of public official immunity would be better decided at the summary judgment stage and on a more complete record.

The Court has otherwise considered plaintiff's complaint in light of the applicable standards and determines that plaintiff has stated plausible claims for relief. *See Twombly*, 550 U.S. at 570; *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019).

8

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss the original complaint [DE 14] is DENIED AS MOOT. Defendants' motion to dismiss the amended complaint [DE 19] is DENIED in part and DENIED WITHOUT PREJUDICE in part as to the issues of qualified immunity and public official immunity.

The clerk is DIRECTED to refer this case to United States Magistrate Judge Robert T. Numbers II for entry of a scheduling order to include a brief period for discovery.

SO ORDERED, this ___ day of March 2026.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9